AILEEN K. HEINZMAN V. C. FREDERICK COON ET AL

No. A-5413. Decided March 21, 1956.
Rehearing overruled May 30, 1956.
(290 S.W. 2d Series 219)

*Cox, Wagner, Adams & Wilson,* of Brownsville, *Maverick, Putman & Putman* and *Basil H. Taylor,* all of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that the order of the probate court of Midland County, Michigan was res adjudicata of the cause tried in the district court of Cameron County, Texas, and that the order of the probate court of Midland County, Michigan was a construction of the will. Thomson v. Moore, 269 Mich. 466, 257 N.W. 864; Creek v. Sachi, 248 Mich. 425, 227 N.W. 817.

*Crain, Muggley, Hardy & Colvin,* and *Ben S. Hardy,* of San Benito, for respondent.

Cited Glover v. Reid, 80 Mich 228, 45 N.W. 91; Burnett v. Goodyear, 329 Mich. 214, 45 N.W. 2d 41.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The cause under review is a dispute over the ownership of an original, and present share dividend product of, fifteen shares of corporate stock, the original shares, together with a diamond ring, having passed under clause 3 of the Michigan will of Clara H. Coon copied in the footnote.[1] The contending claimants are our petitioner, Aileen K. Heinzman, named in clause 3 and asserting a right of remainder thereunder, and our respondent, C. Frederick Coon, as Executor and legatee of the named first taker, Ralph S. Coon, who died in Texas in 1952 in possession of the stock in more or less its present form, and is said by his executor to have been the full fee owner thereof.

The legal questions at issue are: (1) whether Ralph S. Coon took a fee or only a life estate by the terms of clause 3; and (2) whether, in any event, a 1932 judgment of the Michigan probate court actually construed the will to vest absolute ownership in Ralph S. Coon, and is accordingly res adjudicata in favor of the respondent. A judgment for our petitioner Heinzman as plaintiff in the trial court was reversed and rendered for the respondent C. Frederick Coon by the San Antonio Court of Civil Appeals on the ground res adjudicata. 281 S.W. 2d 461.

Disposition of the case has been facilitated by able counsel through their agreement that all questions are governed by Michigan law and through their clear delimitation of those questions.

The Michigan judgment and related proceedings are succinctly described in the opinion of the court below, from which we quote:

---

[1]"I Clara H. Coon of Midland City, Midland County, Michigan, being of sound mind and memory and realizing the uncertainties of life, do hereby make, publish and declare the following to be my last will and testament as follows:

"(1)  It is my desire that all my just bills be paid in full,

"(2)  I give, devise and bequeath to my father James A. Lovelock of Salem, Ohio, one dollar.

"(3)  I give, devise and bequeath to my beloved husband, Ralph S. Coon of Midland City, Michigan, all of my estate, both real and personal of every name and nature including stock in the Dow Chemical Company of Midland City, Michigan, of which I may die seized, and it is my desire that if at the death of my said husband, Ralph S. Coon, there is anything held by him of the said Dow Chemical stock and Diamond Ring, that it shall go to Aileen K. Heinzman of Akron, Ohio, a Second Cousin of mine, but if necessary the said husband, Ralph S. Coon, may use the said stock or the proceeds thereof for himself during his life.

"(4)  I hereby nominate Ralph S. Coon as the sole Executor of this my last Will and Testament, hereby revoking any and all former wills by me made.

"Dated September 26th, A. D., 1930.

"CLARA H. COON (LS)"

"Ralph Coon, the husband of the testatrix, was a beneficiary under the will and was named executor of her estate. On August 30, 1932, he filed an instrument in the Michigan Probate Court, which stated that the estate had been fully administered and should be finally closed. He reported that all claims, demands, and expenses had been paid and then stated:

" 'Your petitioner therefore prays that this statement be treated as his final account, that the administration of said estate be finally closed and that the residue of said estate be assigned to this petitioner according to the provisions of said Will, and that the said Executor and his Bondsmen be released and discharged from further liability in the premises.'

"Thereafter, the probate court made an order which recited that due notice of the hearing had been given, that all debts, charges, and expenses had been paid, 'that all proceedings required by law for the proper administration and settlement of said estate have been taken and that there remains to be assigned to the Beneficiary under the Will of said Deceased, of a residue of the personal estate of the value of Six Hundred Dollars.'[2] The court then ordered:

" 'That such residue of personal estate and real estate of which said deceased died seized, be and the same is hereby assigned to the said Ralph S. Coon, according to the provision of said Will, to each the following part or proportion thereof, to-wit: To the said Ralph S. Coon the whole thereof.' "

For the reasons below stated, we conclude—albeit with some hesitation arising from the difficulty of the questions and our inexperience of Michigan law—that the petitioner Heinzman's position on both questions above stated is correct, and that the judgment of the Court of Civil Appeals should accordingly be reversed and that of the trial court in the petitioner's favor affirmed.

■ As to the estate created in the stock by the will, life estates with power, or at least limited power, of disposition by the life tenant are admittedly possible under the Michigan decisions; and we regard the latter as more nearly favoring such an estate in Ralph S. Coon than a full fee ownership on his part. Robinson v. Finch, 116 Mich. 180, 74 N.W. 472; Bateman v. Case, 170 Mich. 617, 136 N.W. 590.

---

[2]The rest of this recital reads: "and the following described real estate, to wit: All the lands of which said deceased died seized."

In the Robinson case the pertinent portion of the will read as follows:

"Second, After the payment of my just debts and expenses as expressed in the first paragraph herein, I give, devise, and bequeath all the rest, residue and remainder of my estate, both real and personal, to my grandson, Thomas Weldon. Third. In case my said grandson, Thomas Weldon, shall die leaving no wife and children, then it is my desire that the property herein bequeathed to my grandson, Thomas Weldon, and not used by him or for his education and benefit, shall, after the decease of my said grandson (in case he shall die leaving no wife and children), be disposed of as follows; * * * ."

It was held that, while paragraph "Second," considered alone, would vest a full fee simple interest in Thomas Weldon, the provisions of paragraph "Third" should also be taken into consideration, the result being that the property remaining in his hands at his death unmarried and childless belonged to the remainder beneficiaries designated for that event.

It is to be noted that the word "desire" in the "Third" paragraph, while obviously weaker than the words "give, devise and bequeath" of the "Second" paragraph, nevertheless was not considered to make the latter provision precatory, and that the total absence of words such as "life estate" or "for life" did not affect the result.

The decision seems never to have been overruled or expressly modified, although the same justice who wrote the opinion distinguishes it in the later case of Killefer v. Bassett, infra, which reached a contrary result as regards a will with somewhat different language, as will be discussed further on in dealing with the latter decision and others cited for the respondent, Coon.

In Bateman v. Case, supra, the critical provisions were:

"(2) I give, devise and bequeath unto my wife, Harriet M. Bateman, all of my estate both real and personal, and I do hereby empower her, my said wife, to sell and dispose of all or any part of my said estate and convey the same by deed or otherwise without obtaining license from the Court for this purpose; and I especially desire that my said wife shall have the right to use the whole or any part of my said estate for her own use and benefit. (3) If any of my said real or personal estate shall remain after the decease of my said wife then in this case

I give, devise and bequeath all the rest, residue and remainder of my said estate so remaining unto my sons, * * *."

It was held that the widow took a life estate with limited power of disposition, the sons enjoying a fee remainder in what was left unsold at her death. The reasoning was that the powers expressly and affirmatively granted following the " 'give devise and bequeath' " part of clause "(2)" were in effect a limitation on that part, or at least enough indication of a limitation to justify the construction of a life estate in order to avoid discarding clause "(3)" altogether. As in the Robinson case, this result was reached despite the absence of words such as "life estate" or "for life."

The Bateman case, incidentally, was decided subsequently to several of the hereinafter mentioned decisions which are much relied on by the respondent, Coon.

The Bateman and Robinson decisions appear to be rather closely in point with the instant case. The fact that each of them involved separately numbered or lettered clauses as against the one clause 3 of the instant will would seem to be no distinction. In all three cases the first words occurring were such as, considered alone, to create a fee simple estate in the first named taker. In the cited cases, the scrivener could easily have used words such as "life estate" or "for life" or even "life," but failed to do so, whereas in the instant will we do have the language "but *if necessary* * * * may *use* the said stock or the proceeds thereof *for himself during his life*." (Emphasis supplied.) As before indicated, the somewhat precatory character of the word "desire," used in the instant will and that in the Robinson case, did not affect the result in the latter. In both of the earlier decisions the only thing by way of a limitation on the "fee" words at the beginning of the devise (aside, of course, from the designation of a second taker) was merely by inference— in the Robinson case, an inference from the words "and not used by him or for his education and benefit," and in the Bateman case inferences from affirmatively stated rights and powers of the erstwhile fee beneficiary. In the instant case the above-quoted words "if necessary," "use," "for himself" and "during his life" are more direct and specific indications of limitation on the preceding "give, devise and bequeath" language than those in either cited case.

The respondent, Coon, as we understand him, argues that Killefer v. Bassett, (1906), 146 Mich 1, 109 N.W. 21 shows the

Michigan law to have been different at the date of the instant will (1930 from the law as exemplified in petitioner's case of Robinson v. Finch, supra (1898) the court in the Killefer case having harked back to the old case of Jones v. Jones, (1872), 25 Mich. 401, which respondent considers quite favorable to his side. The trouble about this argument is that, while Jones v. Jones does seem to be alive in Michigan even to this day, petitioner's Bateman v. Case, supra, (1912) was six years nearer the instant will (1930) than was respondent's Killefer v. Bassett (1906). Bateman v. Case expressly relied on petitioner's Robinson v. Finch (1898), and although Jones v. Jones was urged upon the court, it was evidently treated as either not in point or not then in vogue.

In that case Mr. Jones, in otherwise lawyerlike language, left his worldly goods to his wife, Thankful B, by a bequest which might be not inaccurately paraphrased as "in fee simple absolute for life with remainder in what she may not have spent on herself to my brother, nephew and the Society of Spiritualists." The court held a fee in Thankful B. We think the "fee" language there involved was considerably stronger than in the instant case, and in any event prefer to follow the later decisions in the Robinson and Bateman cases as nearer in time and analogy. The Jones case seems to present rather a hopeless conflict between quite emphatic "fee" language and subsequent language clearly indicating a life estate. The court probably reasoned in its mind that since the "fee" language came first and was strong, it should be given preference, and therefore declared the "for life" part to be precatory. About the only other solution would have been to void the will as meaningless.

Respondent's Killefer case, supra, written by the same justice who wrote petitioner's Robinson case, did indeed involve a will somewhat similar to that of Clara H. Coon. The will said in substance "give, devise and bequeath X property to my wife, Elvira, and whatever is left of said property at her death, I give to the following named persons * * * ." The holding that the wife took the fee was predicated upon the absence of any limiting words other than the purported remainder provision itself, and the Robinson case ("and not used by him or for his education and benefit") was distinguished on this basis. But, as before indicated, the instant will contains more and stronger limiting words than does even the Robinson case, which the Killefer case and petitioner's later Bateman case both recognize as good law.

In respondent's case of Moran v. Moran, 143 Mich. 322, 106 N.W. 206, 5 L.R.A.N.S. 323, the will said "I give and bequeath to my beloved wife * * * all my property * * * to be *hers absolutely,* providing however, that if at her death any of the said property be *still hers,* then said residue *still hers* shall go to my * * * nearest heir or heirs" (emphasis supplied). The emphasized portions were the basis of the holding that the widow took the fee and, we think, distinguish the facts from those before us, where not only is such emphatic "fee" language absent, but also there is present the limiting language ("if necessary," etc.) heretofore quoted, which finds no counterpart in the Moran case.

Respondent's Grover v. Wood, 337 Mich. 467, 60 N.W. 2d 316, is a fairly strong case for preferring the fee simple construction in cases of the general type considered. There, in brief paraphrase, the will, in the first paragraph of its section or bequest "C," said, "give, devise and bequeath to my dear husband X land, to have and to hold subject to the request hereinafter stated." The next paragraph, in rather lengthy terms, but without once using the words "life estate" or even "life," clearly stated the " 'wish and desire' " of the testatrix and her "charge" to her husband, that he should "make disposition of the corpus of" the bequest "so that it will not pass to his heirs upon his death, but shall revert, after his death, to my heirs hereinabove named." The same paragraph expressly relieved the husband of ever having "to account for" the bequest, spoke again of "income" and "principal" and contained other affirmative (and confusing) express powers.

Not unnaturally, the court's reasoning for its conclusion— that the life estate implications from the will were precatory —is difficult to transpose to the rather different will before us. Among other things, the court emphasized the word "request" in the first paragraph. It does not mention the Robinson case, and its distinction of the Bateman case does not weaken our own deductions from the latter or the former case. We do not consider it controlling.

The cases discussed being those apparently most relied on by the parties, we forebear to discuss the many others cited.

■ In further exercise of our *ad hoc* Michigan jurisdiction, we hold that the afore-described 1932 Michigan probate court decree did not construe the will, or at least did not adjudicate the point here in question, and was thus not *res adjudicata* against

the petitioner, although, admittedly, if the court had construed the will, its construction would have been binding. Farlin v. Sanborn, 161 Mich. 615, 126 N.W. 634, 635.

The cited case seems rather closely in point. That it may contain, as the respondent suggests, an expression unfavorable to petitioner on the point of the actual meaning of the will, obviously does not affect its authority on the point of whether the probate decree there under analysis did or did not adjudicate the will upon the matter in question. The underlying question, as here, was that of life estate versus fee in the first taker, who was also the executrix. The proceeding, as here, was one for approval of her final account *and* distribution of the estate. Her pleadings are not quoted but are described as including an allegation, that she "was the sole devisee" under the will, and a prayer "that such residue * * * might be, by the decree of said court, duly assigned and set over to her," all of which seems no less a predicate for construction than was Ralph S. Coon's somewhat ambiguous allegation "that said estate consists of certain stock to be assigned to this petitioner according to the Will of said deceased," and his corresponding ambiguous prayer that it be so assigned. The order in the Farlin case, written by the judge on the petition, was, "Examined and allowed as stated. Executrix discharged and her bond cancelled." It was held that a construction of the will was neither applied for nor made, the prayer for "assignment" and its corresponding implied allowance being explainable by the right of possession with limited power of disposition conferred by the will on the petitioner-first taker.

The reference in the Farlin opinion to the probate record as failing to show what the executrix-first taker had done with the property is said to distinguish that case and is, indeed, somewhat confusing. However, the reference seems directed to a separate point made by all or some of the same parties who were also contending that there had been a construction of the will vesting fee simple title in the executrix-first taker. That point evidently argued that the probate court, by approving the final account, had at least adjudicated the validity of all transfers of the property in question, which the executrix had *theretofore* made of the property in suit, (although conceivably some of such transfers might have been made in her capacity as beneficiary rather than executrix). The Farlin holding, that the probate decree, by ordering (in effect) the "assignment" of the property by the executrix to herself as beneficiary, did not construe the will to give her a fee simple title, thus does not rest

upon the stated inadequacy of the probate record. That statement was merely made as a reason for rejecting the argument that the probate court, in the part of its decree approving the account, had also approved certain conveyances theretofore made by the executrix.

True, the order in the instant case was more elaborate. Its recitals refer to Ralph S. Coon as *"the* Beneficiary Under the Will" and "residuary Legatee Under the Will" (emphasis supplied), and the dispositive portion states "that such residue of personal estate and real estate * * * be and * * * is hereby assigned to the said Ralph S. Coon, according to the provision of said will, to each the following part or proportion thereof, to wit: To the said Ralph S. Coon the whole thereof." But the shorter order in the Farlin case in effect incorporates the prayer of the petition and is thus an "assignment" to the named beneficiary quite as much as is the instant order. The "according to the provision of said will" in the instant order does not add much of a distinction, since as was observed in the Farlin case, the will necessarily entailed that the first taker have effective possession and power of disposal. The instant words conceivably *could* mean "in fee simple as we construe the will," but they could also mean "for life with power of disposition as provided in the will" or "to be held by him as stated in said will" or "as first taker under said will."

Nor do we think "to the said Ralph S. Coon *the whole thereof"* (emphasis supplied) when taken in its above-mentioned context, means "to the said Ralph S. Coon in fee simple." A close reading of the order, especially its reference to real estate, when the testatrix left no real estate, and the curious arrangement of the language, leaves the strong impression of a printed form designed for distribution of a residual estate in undivided fractions rather than for adjudicating different *estates* in the same piece or pieces of specific property. Particularly with this in mind, and the fact that different items or units of property (a ring and several shares of stock), the expression "the whole thereof" would seem to mean "all of said property" rather than "the full fee title to said property." While it is true that a deed to "the whole of that certain tract," followed by a metes and bounds description, would doubtless be understood as conveying the fee title, the same would be equally true of the same deed, if it had omitted "the whole of." And a deed of "the whole of tract X to A for life" or an assignment of "the whole of said stock for life" would obviously not be self-contradictory. While

no Michigan law is cited to uphold our view on the particular point, neither is any cited to contradict it.

As to the authorities cited generally for the respondent, Noakes v. Noakes, 290 Mich. 231, 287 N.W. 445, 447, is not closely in point, although the bare words of the probate distribution decree in that case are rather similar to those in the instant case. The question was whether the decree had adjudged to Joseph Austin Noakes a certain tract of land, or to put it another way, whether it had adjudged the tract to be personalty under the will. Joseph was admittedly the sole legatee of all personalty, but admittedly the will also purported to devise all realty (in bulk) to the opposing beneficiaries. The lot in question was, at the testator's death, under contract of sale by him to third parties, and the testator's interest was inventoried as personalty, although at some time thereafter and prior to the final decree, the sales contract was rescinded. The terms of the petition for final decree do not appear. The decree apparently first disposed specifically of all the realty to the beneficiaries other than Joseph, except that the lot in question was not mentioned. It then ordered " '* * * that the residue of said estate, consisting of personal property, be and * * * is hereby assigned to Joseph Austin Noakes * * * the sole residuary legatee in accordance with the provisions of said will.' " The court reasoned, with regard to the lot in question, that,

"The order covers such real estate, in view of the facts: (1) the real estate here in question was not otherwise provided for by the order; (2) this part of the order refers to 'the residue' of the estate, which would necessarily include the property in question; (3) such property must have been considered personalty by the court in view of the words 'consisting of personal property.' "

Thus the relevance of the case to the question of whether the instant decree meant to adjudge a fee simple title to Ralph S. Coon is not overly clear.

In Harvey v. Security Trust Co., 242 Mich. 284, 218 N.W. 679, the question was whether the probate distribution decree had adjudicated the validity of a trust, the terms of which in effect denied the cestui enjoyment of the principal so long as he stayed married to his then wife. The petition for the decree apparently made no special allegations as to the validity of the trust but prayed "that the residue of said estate be assigned to the Security Trust Company as trustee of said estate," and the

decree, after thus referring to the petition, stated "It is further ordered that the residue of said estate be and * * * is hereby assigned to the said Security Trust Company, trustee of said estate, in accordance with the provisions of said will."

The critical reasoning of the court is:

"The probate court, by its order assigning residue to the trustee, recognized the existence of a valid trust and that the estate was to be disposed of according to the will 'so far as such will may operate upon it.' 3 Comp. Laws 1915, Sec. 13787. The order of the probate court is in effect that the provision of the will is valid."

The instant problem is not whether the decree adjudicated a bequest to Ralph S. Coon to be valid, but whether it adjudicated the nature of the estate bequeathed. As suggested by the petitioner's case of Farlin v. Sanborn, supra, the order of "assignment" might conceivably imply the validity of the corresponding direction of the will without implying anything more than that the assignee was entitled to possession and in such fashion as to enable him to make a proper transfer of the property for the purposes specified in the will.

Calhoun v. Cracknell, 202 Mich. 430, 168 N.W. 547, resembles the instant case in the character of the will there involved, but not in that of the probate decree, which, if paralleled in the instant case, would have amounted to providing in the instant decree that the stock and ring "be and are hereby assigned to Ralph S. Coon, to be his in fee simple and without remainder to Aileen Heinzman." The difference in the decrees seem substantial.

Judgment of the Court of Civil Appeals is reversed and that of Trial Court is affirmed.

Opinion delivered March 21, 1956.

Rehearing overruled May 30, 1956.